IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal Case No. 1:14-cr-00399 (RDA) |
| JONATHAN PAUL SIDHU, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jonathan Paul Sidhu's ("Defendant") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion"). Dkt. 54. Considering the Motion and the Government's Response in Opposition to the Motion ("Opposition") (Dkt. 55), and for the reasons that follow, it is hereby ORDERED that Defendant's Motion is DENIED.

### I. BACKGROUND

#### A. Defendant's Conviction

On December 9, 2014, Defendant pleaded guilty to a single count of criminal information charging him with conspiracy to distribute five hundred grams or more of a mixture and substance containing methamphetamine, in violation of 18 U.S.C. § 846. *See* Dkt. Nos. 39; 40. Accordingly, on March 20, 2015, he was sentenced to 145 months of imprisonment, to be followed by five years of supervised release. *See* Dkt. 50, 1-3. Defendant is currently serving his sentence of imprisonment in the custody of the Bureau of Prisons ("BOP") at Victorville Federal Correctional Institute ("FCI Victorville"). Dkt. 55-1, 1. Defendant is scheduled to be released from BOP custody on April 9, 2025. *Id.*

1

### B. COVID-19

According to the Centers for Disease Control and Prevention ("CDC"), "Coronavirus (COVID-19) is an illness caused by a virus that can spread from person to person." One "can become infected from respiratory droplets when an infected person coughs, sneezes, or talks." People "may also be able to [contract the virus] by touching a surface or object that has the virus on it, and then by touching [their] mouth, nose, or eyes." On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. Jaime Ducharme, *World Health Organization Declares COVID-19 a 'Pandemic.' Here's What That Means*, TIME Magazine, (Mar. 11, 2020, 12:39 PM), https://time.com/5791661/who-coronavirus-pandemic-declaration/ (last visited July 8, 2021). Currently, there are three vaccines authorized and recommended in the United States to prevent COVID-19. For those who are not yet vaccinated, the CDC advises that the "best way to protect [one]self is to avoid being exposed to the virus that causes COVID-19." The CDC further counsels that good preventative measures include (1) avoiding close contact with others; (2) wearing a face mask; (3) cleaning and disinfecting frequently touched surfaces; and (4) frequent hand washing with soap and water for a minimum of 20 seconds. The CDC has also indicated that while everyone is at risk of contracting the virus, "[o]lder adults and people of any age who have serious underlying medical conditions may be a higher risk for more severe illness."

### II. ANALYSIS

Defendant requests that pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court immediately release him from FCI Victorville, where he is currently serving his sentence of imprisonment. *See generally* Dkt. 54. Defendant makes this request in light of the ongoing COVID-19 pandemic. *Id.*

Section 3582(c) provides in relevant part that:

> [t]he court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – (A) the court, upon motion of the Director of the Bureau of

> Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A). Accordingly, this Court must first consider whether Defendant has exhausted the remedies set forth in § 3582(c)(1)(A), such that this Court may evaluate the merits of Defendant's Motion. Second, should the Court find that Defendant has, in fact, exhausted the § 3582(c)(1)(A) remedies, the Court must determine whether extraordinary and compelling reasons exist to justify his compassionate release. The Court will address both of these issues in turn.

## A. Exhaustion of Remedies

This Court finds that, based on the facts available in the record, Defendant's Motion is not ripe for review because he has not exhausted his administrative remedies under § 3582(c)(1)(A). Indeed, "[t]he court *may not* modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). "Such statutory language imposes a mandatory exhaustion requirement when no provision for an exception has been made." *United States v. Beahm*, No. 1:05-CR-249, 2020 WL 4514590, at *1 (E.D. Va. Aug. 5, 2020) (citing generally *Ross v. Blake*, 136 S. Ct. 1850 (2016); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

3

Defendant, who bears the burden, has not demonstrated how he has exhausted his administrative remedies under § 3582(c)(1)(A), *see* Dkt. 54, and the Government contends that Defendant has not done so. *See* Dkt. 55, 6-8. Thus, it does not appear that this Court is in a position to consider the merits of Defendant's Motion.

### B. Whether Release is Warranted

Nevertheless, even if Defendant had exhausted his administrative remedies under § 3582(c)(1)(A), this Court finds under the present circumstances, "extraordinary and compelling reasons" do not exist to warrant his release pursuant to § 3582(c)(1)(A).

Congress has not defined what constitutes "extraordinary and compelling" circumstances under § 3582. Instead, Congress has delegated to the United States Sentencing Commission ("the Commission") the responsibility of defining the scope of that phrase. *Id*. Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .[1] (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

---

[1] Defendant is not "at least 70 years old[,]" U.S.S.G. § 1B1.13, and thus, the omitted subsection (1)(B) is inapplicable to the case at hand. Dkt. 55-1, 1.

U.S.S.G. § 1B1.13. Further, the Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then, "extraordinary and compelling reasons exist" where the defendant's medical condition, age, family circumstances, or other reason justify release. U.S.S.G. § 1B1.13, cmt. n. 1.

After the enactment of the First Step Act, many district courts, including this Court, have determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n. 1 "provide[ ] helpful guidance, [but] . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019), and citing *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Fox*, No. 2:14-cr-02-DBH, 2020 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D. Va. 2020); *United States v. Young*, 458 F. Supp. 3d 838, 844-45 (M.D. Tenn. 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *2-3 (D. Utah Feb. 18, 2020) (collecting cases)). To be sure, Section 3582(c)(1)(A) "requires [ ] that sentence reductions be consistent with 'applicable policy statements.'" *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Recently, the United States Court of Appeals for the Fourth Circuit has determined that "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (emphasis is original) (quoting 18 U.S.C. § 3582(c); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

5

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n. 1(A)-(C) . . . ." *Redd*, 444 F. Supp. 3d at 726. Accordingly, this Court will treat the Section 1B1.13 cmt. n. 1(A)(C) factors as a guide but not as an exhaustive list of circumstances that could justify compassionate release. *See also United States v. Jackson*, No. 3:17-cr-29-02, 2021 WL 1723653, at * 1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

However, for the reasons that follow, the Court does not find that release is warranted.

### i. 18 U.S.C. § 3553(a) Factors

As set forth above (*supra*, p. 3), before this Court should even consider whether the circumstances at hand are "extraordinary and compelling," the Court should first consider the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires that the Court consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for– . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, on March 20, 2015, Defendant was sentenced to a term of 145 months of imprisonment to be followed by a five-year term of supervised release. Dkt. 50, 1-3. In

considering each of the factors set forth in § 3553(a), this Court finds that a term of 145 months of imprisonment remains appropriate, particularly in light of the nature of the offense that Defendant committed (*supra*, p. 1). On the one hand, this Court recognizes and appreciates Defendant's efforts to rehabilitate during his term of imprisonment. *See* Dkt. 55-1, 1-2. It appears that during his incarceration, Defendant has taken advantage of educational opportunities and has participated in a residential drug treatment program. *Id*. And it seems that he has also taken courses in parenting, financial management, mental health, ethics, and driver's education and has earned his GED. *Id*. The Court encourages the Defendant to continue to take advantage of these rehabilitative opportunities.

But on the other hand, Defendant has admitted to having participated in dangerous activity—a conspiracy to distribute a substantial amount of methamphetamine. *See* Dkt. 40. The Statement of Facts supporting Defendant's guilty plea indicates that "[i]n addition to distributing methamphetamine, [ ] [Defendant] agreed to sell [ ] undercover detectives a firearm" and ultimately "mailed a Lorcin 380 pistol with one magazine to the undercover post office box." Dkt. 41, ¶¶ 4, 6. Moreover, notwithstanding the instant conviction, Defendant brought before this Court a significant criminal record, which includes convictions of battery of a spouse and cohabitant; general assault and battery; at least three convictions of possession of a controlled substance; and buying or receiving a stolen motor vehicle—all very serious offenses. *See* Dkt. 43, 12-19. Considering this, the Court finds that the application of the § 3553(a) factors weigh in favor of continued detention.

   ii. U.S.S.G. § 1B1.13, cmt. n. 1(A)-(C) Factors

Moreover, neither do Defendant's medical conditions, age, nor apparent family circumstances, indicate "extraordinary and compelling reasons" that warrant a reduction in the term of Defendant's imprisonment.

### a. Medical Condition of Defendant

With respect to medical conditions, U.S.S.G. §1B1.13, cmt. n. 1(A) provides that an "extraordinary and compelling reason" exists where:

> (i) [t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13, cmt. n. 1(A)(i). Additionally, subsection (ii) of that same provision further indicates that a defendant's medical conditions may be indicative of a "an extraordinary and compelling reason" for release when a defendant is:

> (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n. 1(A)(ii).

Defendant has not demonstrated to the Court that he has a medical condition that may be presently described by the characteristics set forth in U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) and (ii). While Defendant has represented that he suffers from severe, lifelong asthma (Dkt. 54, 2), he has also reported that he has not experienced an asthma attack since childhood (Dkt. 55-2, 10). Moreover, Defendant has not described these conditions on their own as being "terminal," or having a prognosis "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n. 1(A); Dkt. 54.

Significantly, Defendant has also failed to sufficiently show that his medical needs will not be met while serving his prison term at FCI Victorville or that he will be able to obtain or afford better medical care when released. To be sure, the mere existence of COVID-19 in society and the chance that the virus may possibly spread to a particular prison alone cannot on its own justify compassionate release. *See Raia*, 954 F.3d at 597; *see also United States v. White*, No. 3:18-cr-61, 2020 WL 3442171 at *5 (E.D. Va. June 23, 2020) ("Defendant's request for release on home confinement is based upon nothing more than 'the mere possibility that COVID-19 will spread to his facility'—a fear that is insufficient to justify release.") (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)). Courts sitting in the Eastern District of Virginia "[h]ave found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, __ F. Supp. 3d __, No. 2:20-cr-150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *Feiling*, 453 F. Supp. 3d at 841).

"To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor." *United States v. Chandler*, No. 3:15-mj-122, 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020) (citing *Beahm*, 2020 WL 4514590, at *2; *White*, 2020 WL 3442171, at *5). Although the CDC recognizes moderate to severe asthma as a COVID-19 risk factor, asthma symptoms must occur daily to be classified as moderate. *People with Certain Medical Conditions*, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 8, 2021); *Classification of Asthma*, University of Michigan Medical School (Oct. 26, 2020), https://www.uofmhealth.org/health-library/hw161158 (last

visited July 8, 2021). By his own admission, Defendant has not suffered an asthma attack since childhood, and therefore, his asthma does not constitute a particularized susceptibility. *See* Dkt. 55-2, 10.

Moreover, three COVID-19 vaccines have become increasingly available on an ongoing basis. Significantly, as of the date of this Order, the BOP has reported that it has administered a total of 199,536 vaccine doses. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited July 8, 2021). And it appears that on April 20, 2021, Defendant received his first dose of the Pfizer-BioNTech vaccine, which suggests that Defendant faces reduced risks from the COVID-19 virus and thereby counsels in favor of a finding that release is not appropriate. *See United States v. Jones*, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) ("Considering [ ] [that the defendant] has received the COVID-19 vaccination, the Court believes that he faces reduced risks from the virus, further weighing against his request for compassionate release."); Dkt. 55-2, 52-53.

Defendant also argues that he is at a higher risk of both contracting and dying from COVID-19 because, as he describes himself, he is "Mexican American." Dkt. 54, 2. This Court recognizes the unfortunate reality that COVID-19 has disproportionately affected people of color. *See Health Equity Considerations and Racial and Ethnic Minority Groups*, CDC (Apr. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited July 8, 2021). However, ethnicity is distinct from the medical COVID-19 risk factors because race only influences transmission through intermediary factors like health and social inequities, which Defendant has not demonstrated are specifically at play in FCI Victorville. *See id.* Because of this distinction, Defendant's ethnicity does not constitute a particularized susceptibility to COVID-19. *See United States v. Thomas*, 5:13-cr-18, 2020 WL 3895781, at *4

(W.D. Va. July 10, 2020) (Denying compassionate release because the petitioner's race did not make him more susceptible to contracting COVID-19); *United States v. Jackson*, No. 05-20018-01-JWL, 2020 WL 5231317, at *2 (D. Kan. Sept. 2, 2020) ("The fact that Mr. Jackson is African-American does not constitute a risk factor for COVID-19 in the same way that an underlying medical condition does"); *United States v. Leigh-James*, No. 3:15-CR-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (citing *United States v. Alexander*, No. CV 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020); *Carlos M.D. v. Anderson*, No. 2:20-cv-3908, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020); *United States v. White*, No. 15-cr-20040-01, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020); *United States v. Fuller*, No. CR17-0324JLR, 2020 WL 2557337, at *4 n.4 (W.D. Wash. May 20, 2020)).

Defendant also fails to make the requisite showing of a particularized risk of infection *at his facility*. *See White*, 2020 WL 1906845, at * 1 n.2 (quoting *Feiling*, 453 F. Supp. 3d at 841). As of July 8, 2021, only one inmate out of 1,296 at FCI Victorville has COVID-19. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 8, 2021); *See also FCI Victorville Medium II*, BOP, https://www.bop.gov/locations/institutions/vvm/ (last visited July 8, 2021). This falls far short of an "actual outbreak," which is required to show a particularized risk at an inmate's facility. *See Beahm*, 2020 WL 4514590, at *2 (finding inmate particularly susceptible but ultimately ineligible for release because no actual outbreak at his facility); *United States v. Woolridge*, No. 3:09-cr-156, 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where prison reported only ten active cases).

Defendant has not made the requisite showing of a "particularized susceptibility" and a "particularized risk of contracting the disease at his prison facility." *See White*, 2020 WL 1906845, at *1 n.2 (quoting *Feiling*, 453 F. Supp. 3d at 841).

11

Accordingly, the Court finds that the grounds set forth in U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) and (ii) do not warrant Defendant's release.

### b. Age of Defendant

Further, because Defendant is 31 years old, his age does not support a finding of immediate release from imprisonment. Dkt. 55-1, 1. United States Sentencing Guideline § 1B1.13, cmt. n. 1(B) indicates that "extraordinary and compelling reasons" exist where "[t]he defendant (i) is *at least 65 years old*; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n. 1 (B) (emphasis added). Defendant does not meet the age requirement, which further supports a finding that compassionate release is inappropriate.

### c. Family Circumstances

Additionally, "extraordinary and compelling reasons" for release may exist when "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" has occurred or where "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner[,]" has taken place. U.S.S.G. § 1B1.13(C). Defendant has not presented to the Court any evidence to meet these requirements. Dkt. 54. Accordingly, the Court will not grant release on this ground.

### III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 54) is DENIED.

It is so ORDERED.

Alexandria, Virginia
June 9, 2021

                                                /s/
                                       Rossie D. Alston, Jr.
                                       United States District Judge